UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| CARLOS WARDLAW and LEVERTIS VICKERS, individually and on behalf of all those similarly situated, </br></br> Plaintiffs, </br></br> v. </br></br> FREEDOM TRAILERS, LLC, and MARK BAXLEY, </br></br> Defendants. | ) ) ) ) ) ) ) ) ) Case No. 5:17-CV-00010-LGW-RSB ) ) ) ) ) |

**JOINT MOTION FOR APPROVAL OF**
**FLSA COLLECTIVE ACTION SETTLEMENT AND A SERVICE AWARD**

Plaintiffs Carlos Wardlaw and Levertis Vickers ("Plaintiffs") and Defendants Freedom Trailers, LLC and Mark Baxley ("Defendants"), by and through their respective undersigned counsel, respectfully request that the Court approve their FLSA collective action settlement and a service award. In support of their joint motion, the parties state:

**I.   STATEMENT OF FACTS AND SUMMARY OF PROCEEDINGS**

    **a.   Statement of Facts**

Named Plaintiffs Carlos Wardlaw and Levertis Vickers were employed as maintenance and production line workers with Defendants until Defendants terminated their employment on January 30, 2017. (Declaration of Carlos Wardlaw ("Wardlaw Dec.") (Dkt. 12-1) ¶ 4.) Plaintiffs filed this lawsuit on January 18, 2017, alleging that Defendants violated the FLSA by not properly paying

them or other similarly-situated employees proper overtime compensation.[1]  (Dkt. 1.)  Plaintiffs assert in this lawsuit that Defendants violated the Fair Labor Standards Act ("FLSA") when they did not take into account the hours, including the overtime hours, that they worked and failed to pay them an overtime premium.  (*Id.*)  Plaintiffs alleged that Defendants paid Plaintiffs and other similarly-situated employees on a "production" basis.  (*Id*. ¶ 5.)  In other words, Defendants compensated Plaintiffs by providing them with a lump sum each week, which sometimes fluctuated.  (*Id.*)  A few weeks after filing their Complaint, the named Plaintiffs amended their Complaint and also alleged retaliation.  (Dkt. 16.)  Defendants have at all times denied the allegations asserted by Plaintiffs as set forth in Defendants' Answer to Amended Complaint. (Dkt. 22.)

The parties worked together and agreed to conditional certification. After the parties worked cooperatively to agree on the notice process, the Court authorized Plaintiffs to send a judicially-approved notice to all potential opt-in plaintiffs.  (Dkt. 75.)

Within the time period ordered by the Court, Plaintiffs sent the agreed-upon notice of the lawsuit to 357 potential opt-in plaintiffs.  During the opt-in period, 134 employees (or nearly 40% of the eligible employees) joined the case. (*See* Docket.)

### b.     Settlement

The parties' settlement discussions continued throughout the litigation.  As part of these discussions, the parties agreed to engage in informal discovery to analyze the amounts that may be owed to Plaintiffs and the Opt-in Plaintiffs.  From approximately May until September 2017, Defendants provided to Plaintiffs pay and time records for 134 individuals spanning the previous

---

[1]     Plaintiff pleaded opt-in FLSA collective action claims but did not assert any opt-out Rule 23 class action claims, and this settlement does not involve creation of any Rule 23 settlement classes or otherwise implicate Fed. R. Civ. P. 23 in any way.

three years.[2]  In total, Defendants produced to Plaintiffs tens of thousands of pages of time cards and pay records, and both parties spent several months reviewing the records to calculate the amounts due to the Plaintiffs and Opt-In Plaintiffs.  Because Defendants had been paying employees on a "production" basis that varied week to week, the parties' calculations included discerning the proper hourly rate for every individual week, calculating the hours worked for every individual week, and then running an analysis to determine how much overtime may be owed, if any, for each individual week.  Both parties ran this analysis for all 130+ individuals, spanning every week for a three-year period.

On September 21, 2017, the parties participated in a full-day mediation with Daniel Klein, Esq.  They reached a settlement at this mediation for all 134 individuals (inclusive of Plaintiffs) on the following terms[3]:  Defendants agreed to pay a total settlement amount of $500,000, to fully resolve and settle this case, a total which included: (1) payments to members of the settlement class based on their hours worked, hourly rates, and length of service,[4] (2) Plaintiffs' attorneys' fees, costs and expenses approved by the Court (for which Plaintiffs are concurrently filing a separate motion), (3) any Court-approved service award (for which Plaintiffs seek approval under Section 3(c) of the Settlement Agreement[5]), and (4) the full amount of class members' W-2 withholdings.  The parties expressly agreed that they would jointly submit the Settlement Agreement to this Honorable Court

---

[2]   Defendants changed their payroll practices at issue in or about March 2017 and began paying their employees on an hourly basis, and they have continued to pay employees for the overtime that they worked ever since.
[3]   A copy of the parties' Settlement Agreement is attached as Exhibit 1.
[4]   The parties agreed that any settlement amounts will not revert to Defendants and, instead, will be reallocated to the participating Plaintiffs and Opt-In Plaintiffs.
[5]   This amount represents not only a "service award" to the Named Plaintiffs, but also damages in connection with their allegations of retaliation when they were terminated for filing this lawsuit against Defendants.  Although the Court's Order required Defendants to return Plaintiffs to work and compensate them for their time missed, it did not address any potential additional damages, including liquidated damages under 29 U.S.C. § 216(b), to which Plaintiffs might be entitled as part of their FLSA retaliation claims.

requesting the Court's approval.

Each Opt-In Plaintiff's payment amount was calculated based on a review of tens of thousands of pages of employee pay and time records.  For dates on which records did not exist (for example, when an employee forgot to clock out), Plaintiffs' counsel calculated the amounts potentially owed using an estimate based on other surrounding days' clock in or clock out records.  After analyzing the time and pay records and calculating the amounts owed to the Opt-In Plaintiffs, Plaintiffs' counsel believes that the settlement compensates each individual for all the overtime compensation that he or she may be owed over a three-year period and a significant portion of the potential liquidated damages.  Additionally, the parties agreed to provide a minimum of $250.00 to any Opt-In Plaintiff whose records did not show compensation owed of more than that amount.

The Settlement Agreement provided for each Opt-In Plaintiff to be sent a settlement notice ("Notice") by Plaintiffs' counsel in an agreed-upon form. The Notice sent to each Opt-In Plaintiff is attached as Exhibit 2 to this motion.  The Notice sets forth the material settlement terms, instructions on how to reject the settlement if one chose to do so (and provided them thirty days to do so), and addresses all material issues about the settlement.  (*See* Settlement Agreement (Ex. 1), Exhibit 2.)

Plaintiffs sent the Notice to all 134 individuals on November 17, 2017.  Showing the quality of the settlement, no Opt-In Plaintiff rejected the settlement.

## II.   ARGUMENT AND CITATION OF AUTHORITY

To have an enforceable release of FLSA claims in this Circuit, either the Court or the U.S. Department of Labor must review and approve agreements settling alleged violations of the FLSA. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (holding claims for back wages arising under the FLSA may be settled or compromised only with the approval of

the Court or the Secretary of Labor). Because the Agreement was not made under the supervision of the Secretary of Labor, "it is valid only if the district court enter[s] a 'stipulated judgment' approving it." *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1308 (11th Cir. 2013) (citing *Lynn's Food*, 679 F.2d at 1352-54). Accordingly, the parties submit a copy of the Settlement Agreement for the Court's review, ratification, and entry of stipulated judgment approving it.

To approve a settlement of overtime claims proposed by an employer and an employee, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised under the FLSA. *Lynn's Food*, 679 F.2d at 1355. If a settlement in an FLSA suit reflects a "reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

    **a.**    **Settlement of FLSA Claims**

The parties stipulate to the existence of a *bona fide* dispute. In this regard, Plaintiffs contend that Defendants failed to compensate them and other similarly-situated individuals at an overtime rate for hours worked over forty. Defendants deny this allegation. The parties are resolving the matter in order to avoid the cost and time of litigating the issues, as well as the risks associated with continued litigation. These risks include those associated with a collective action in general, as well as Plaintiffs' liquidated damages argument, Defendants' good-faith defense, and the fact that complete time records do not exist for all Opt-In Plaintiffs.

The parties have been represented by counsel experienced in FLSA litigation, including in collective actions, throughout the litigation and the negotiation of the Settlement Agreement. The parties are satisfied that the amounts to be paid (subject to the Court's approval) represent a sufficient compromise of their FLSA claims. After analyzing the time and pay records and calculating the

amounts owed to the Opt-In Plaintiffs, Plaintiffs' counsel believes that the settlement compensates all participating individuals for all the overtime that they may be owed over a three-year period and a significant portion of the potential liquidated damages.  The facts that *nearly 40% of eligible employees opted-in to this collective action*[6] and *none of the 134 Opt-In Plaintiffs chose to reject the settlement* when given the opportunity to do so weigh in favor of approval.[7]

Counsel for both parties represent that the settlement entered into by the parties was an arm's-length compromise, and there was no collusion with regard to the settlement of this matter.  Indeed, the parties reached the settlement only after (1) informal discovery relating to pay and time records, (2) several months spent reviewing and analyzing pay and time records, and (3) engaging in a full day mediation with a mediator well-versed in the FLSA.  Counsel for both parties agree that, in their

---

[6]   Nearly forty percent represents a high opt-in rate.  *See* Iliza Bershad, "Employing Arbitration: FLSA Collective Actions Post-*Concepcion,*" 34 *Cardozo L. Rev.* 359, 385 (2012) ("[S]tudies show that only 15.71% of potential plaintiffs consent to opt in to collective action classes under FLSA. These low opt-in rates are attributed to a number of factors, most of which are grounded in the demographic of the typical FLSA plaintiff. Low income individuals, who are most at risk of wage-hour violations, tend to be the most mobile and have the highest turnover rates, and thus they often do not receive notice of impending litigation when it is sent to them. Employees with low education levels, such as likely FLSA plaintiffs, are also less likely to understand and carefully read an arbitration agreement, and are equally unlikely to understand a notice of an impending lawsuit. Finally, even if the notice is understood, the employee will often hesitate to sign it for fear of retaliation or deportation."); *see also Doe 1-2 v. Deja Vu Servs., Inc.*, No. 2:16-CV-10877, 2017 WL 2629101, at *8 (E.D. Mich. June 19, 2017) (finding a 16% opt-in rate to be "high"); *Rodriguez v. D.M. Camp & Sons*, 2013 WL 2146927, *4 (E.D. Cal. 2013) (15.05% claims rate); *Scott v. Aetna Servs., Inc.*, 201 F.R.D. 261, 266-67 (D. Conn. 2002) (7.8% opt-in rate for FLSA class); *Jankowski v. Castaldi*, 2006 WL 118973, *2 (E.D.N.Y. 2006) (8.9% opt-in rate).

[7]   *See Garner v. State Farm Mut. Auto. Ins.,* No. CV 08 1365 CW (EMC), 2010 WL 1687832, *15 (N.D. Cal. Apr. 22, 2010) (finding that an opt-out rate of 0.4 percent supported "the fairness of the Settlement"); *Mangone v. First USA Bank,* 206 F.R.D. 222, 227 (S.D. Ill. 2001) (finding that an opt-out rate of 0.10614 percent and an objection rate of 0.0052 percent represented "overwhelming support" for a settlement by class members and "strong circumstantial evidence supporting the fairness of the Settlement"); *see also Churchill Village*, 361 F.3d at 577 (affirming approval of a class action settlement where 90,000 class members received notice, and 45 objections were received); *In re Austrian and German Bank Holocaust Litig.,* 80 F.Supp.2d 164, 175 (S.D.N.Y. 2000) (finding that a small number of objectors was "indicative of the adequacy of the settlement").

respective opinions and based on their analyses of the pay and time records, the settlement is fair and reasonable under the circumstances. *See Deja Vu Servs., Inc.*, 2017 WL 2629101, at *8 (where 16% of potential class members opted-in, "[t]he Court considers the overwhelmingly positive response a strong indication of support for the proposed settlement.").

### b. Approval of Service/Retaliation Payment to Named Plaintiffs

In Section 3(c) of the Settlement Agreement, the parties agreed to, and Plaintiffs request approval for, a service/retaliation payment of $10,000 to the two named Plaintiffs. This payment represents compensation for (1) the reputational risk of serving as named Plaintiff to the benefit of unidentified eligible settlement participants and (2) Plaintiffs' conferring a benefit not only on all 134 Opt-In who will receive a settlement payment should the Court approve this settlement, but also all of Defendants current non-exempt employees who received the benefit of a favorable change in Defendants' pay practices as for the alleged regular rate violation.

While Plaintiffs recognize that this award may be on the high side of typical service awards, they submit that there is good reason for this amount. In addition to the benefits discussed above, Plaintiffs' proposed service/retaliation payment represents a portion of their alleged damages as part of the allegations of retaliation when they were terminated for filing this lawsuit against Defendants. The Court's January 2017 Order required Defendants to return Plaintiffs to work and compensate them for their time missed, but it addressed no additional damages, including liquidated damages under 29 U.S.C. § 216(b), to which Plaintiffs might be entitled as part of their FLSA retaliation claims. The parties agreed to a broader release in the Settlement Agreement (only for the Named Plaintiffs, and not for the Opt-In Plaintiffs), reflecting that this payment concerns Plaintiffs' FLSA retaliation claims as well.

Service awards to representative plaintiffs in FLSA collective action settlements are

warranted. *See Basterash v. MedX, Inc.*, No. 13 C 7814, 2014 U.S. Dist. LEXIS 12818 at *3 (N.D. Ill. Jan. 31, 2014) ("incentive awards may have a place in collective actions under the FLSA just as they do [for Rule 23 class suits]"); *see also Hosier v. Mattress Firm, Inc.*, No. 3:10-cv-294-J-32 JRK, 2012 U.S. Dist. LEXIS 94958, at *14-15 (M.D. Fla. June 8, 2012) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. Such awards are justified when the class representatives expend considerable time and effort on the case, especially by advising counsel, or when the representatives risk retaliation as a result of their participation." (internal quotations and citations omitted)). And courts routinely approve service payments in significant amounts, even in the absence of the retaliation factor that is present here. *See, e.g., Walsh v. CorePower Yoga LLC*, No. 16-CV-05610-MEJ, 2017 WL 4390168, at *13 (N.D. Cal. Oct. 3, 2017) (approving service award of $10,000 in FLSA collective action that did not involve retaliation allegations); *Castillo v. Noodles & Co.,* No. 16-cv-03036, 2016 WL 7451626, at *2 (N.D. Ill. Dec. 23, 2016) (approving $10,000 service award to four plaintiffs in FLSA settlement for a total of $40,00 in service awards); *Morefield, et al. v. Noteworld, LLC*, Case No. 1:10-cv-00117-JRH-WLB, Dkt. 64 at pp. 11-12 (S.D.Ga. Apr. 18, 2012) (approving service award of $15,000 to three named plaintiffs).

## CONCLUSION

For the reasons set forth above and for good cause shown, the parties respectfully request that this Court enter the Order attached as Exhibit 3, entering a stipulated Judgment approving the Agreement attached hereto as Exhibit 1.

Respectfully submitted, this 19th day of January, 2018.

        CONSTANGY, BROOKS, SMITH
        & PROPHETE, LLP

        /s/ Alyssa K. Peters
        W. JONATHAN MARTIN II
        Georgia Bar No. 474590
        ALYSSA K. PETERS
        Georgia Bar No. 455211
        577 Mulberry Street, Suite 710
        P.O. Box 1975
        Macon, GA 31202-1975
        (478) 750-8600
        jmartin@constangy.com
        apeters@constangy.com

        Counsel for Defendants


        By: /s/ Andrew Weiner
        John F. Beasley, Jr.
        Georgia Bar No. 045010
        JF BEASLEY LLC
        31 North Main Street
        P.O. Box 309
        Watkinsville, GA  30677
        Tel: (706) 769-4410
        Fax: (706) 769-4471
        jfbeasley@jfbeasleylaw.com

        Andrew L. Weiner
        Georgia Bar No. 808278
        Jeffrey B. Sand (*pro hac*)
        Georgia Bar No. 181568
        THE WEINER LAW FIRM LLC
        3525 Piedmont Road
        7 Piedmont Center, 3rd Floor
        Atlanta, Georgia 30305
        (404) 205-5029 (Tel.)
        (404) 254-0842 (Tel.)
        (866) 800-1482 (Fax)
        aw@atlantaemployeelawyer.com
        js@atlantaemployeelawyer.com

                                Oscar E. Prioleau, Jr. (*pro hac*)
                                Georgia Bar No. 588510
                                PRIOLEAU & MILFORT, LLC
                                3800 Camp Creek Parkway
                                Building 1800, Suite 124
                                Atlanta, Georgia 30331
                                (404) 526-9400 (Tel.)
                                (404) 920-3330 (Fax)
                                oscar@pmlawteam.com

                                COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND A SERVICE AWARD with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

> W. JONATHAN MARTIN II
> ALYSSA K. PETERS
> 577 Mulberry Street, Suite 710
> P.O. Box 1975
> Macon, GA 31202-1975
> (478) 750-8600
> jmartin@constangy.com
> apeters@constangy.com

This 19th day of January, 2018.

> /s/ Andrew Weiner
> Counsel for Plaintiffs