UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| CARLOS WARDLAW and LEVERTIS VICKERS, individually and on behalf of all those similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>)<br>) |
| v. | ) Case No. 5:17-CV-00010-LGW-RSB |
| FREEDOM TRAILERS, LLC, and MARK BAXLEY, | )<br>)<br>)<br>) |
| Defendants. | ) |

**PLAINTIFF'S UNOPPOSED MOTION
FOR ATTORNEY'S FEES AND COSTS**

Plaintiffs Carlos Wardlaw and Levertis Vickers ("Plaintiffs"), by and through their undersigned counsel, respectfully request that the Court approve their request for attorneys' fees as part of the settlement of this action.[1] In support of their motion, Plaintiffs state as follows:

**A.    Settlement of the Action**

This action began as a proposed collective action under the Fair Labor Standards Act when Plaintiff filed their Complaint on January 18, 2017 seeking overtime compensation for themselves and other similarly-situated employees. (Dkt. 1.) The action quickly morphed into an overtime and retaliation case when Defendants fired Plaintiffs immediately after being served with the Complaint. (Dkt. 16.) Specifically, on February 3, 2017, Defendants fired Plaintiffs and provided them with separation notices that stated Defendants terminated Plaintiffs three days earlier because,

---

[1]    Defendants do not oppose Plaintiffs' request, but they do not agree with all of Plaintiffs' assertions in this motion.

"Employee filed suit against the company and was terminated." (*Id*. ¶¶ 11-12.) Plaintiffs immediately moved for a preliminary injunction and a temporary restraining order, and after the parties' counsel worked together to resolve the issue, Defendants returned Plaintiffs to work. (Dkts. 12, 23.)

On February 6, 2017, Plaintiffs moved to conditionally certify the class. (Dkt. No. 13.) After the parties worked cooperatively to agree on the motion and the notice process, the Court granted Plaintiffs' motion and authorized Plaintiffs to send a judicially-approved notice to all potential opt-in plaintiffs. (Dkt. 75.)

A review of Defendants' employee records showed that 357 current and former employees were eligible to participate in this action. After Plaintiffs sent notice of this action to each of those employees, *134 individuals (or nearly 40% of eligible employees) opted-in to this collective action.*[2]

On June 20, 2017, Plaintiffs filed an Emergency Motion (1) to Reopen Case for Limited Purpose of Addressing Motion for Protective Order and (2) for Protective Order and Other Relief and Brief in Support Thereof. (Dkt. 105.) Plaintiffs asserted, *inter alia*, that Defendants had

---

[2]   Nearly forty percent represents a high opt-in rate. *See* Iliza Bershad, "Employing Arbitration: FLSA Collective Actions Post-*Concepcion*," 34 *Cardozo L. Rev.* 359, 385 (2012) ("[S]tudies show that only 15.71% of potential plaintiffs consent to opt in to collective action classes under FLSA. These low opt-in rates are attributed to many factors, most of which are grounded in the demographic of the typical FLSA plaintiff. Low income individuals, who are most at risk of wage-hour violations, tend to be the most mobile and have the highest turnover rates, and thus they often do not receive notice of impending litigation when it is sent to them. Employees with low education levels, such as likely FLSA plaintiffs, are also less likely to understand and carefully read an arbitration agreement, and are equally unlikely to understand a notice of an impending lawsuit. Finally, even if the notice is understood, the employee will often hesitate to sign it for fear of retaliation or deportation."); *see also Doe 1-2 v. Deja Vu Servs., Inc.*, No. 2:16-CV-10877, 2017 WL 2629101, at *8 (E.D. Mich. June 19, 2017) (finding a 16% opt-in rate to be "high"); *Rodriguez v. D.M. Camp & Sons*, 2013 WL 2146927, *4 (E.D. Cal. 2013) (15.05% claims rate); *Scott v. Aetna Servs., Inc.,* 201 F.R.D. 261, 266-67 (D. Conn. 2002) (7.8% opt-in rate for FLSA class); *Jankowski v. Castaldi*, 2006 WL 118973, *2 (E.D.N.Y. 2006) (8.9% opt-in rate).

interfered with individuals from opting-in to this action and asked the Court to re-open the opt-in period for thirty days, require Defendants to provide a curative notice, and hold that all withdrawals submitted at that point were ineffective. (*Id.*) Over the course of the next week, the parties' counsel worked together and resolved the issues raised in Plaintiffs' Emergency Motion. On June 26, 2017, the Court held a telephonic conference on Plaintiffs' Emergency Motion and granted Plaintiffs' Emergency Motion four days later. (Dkt. 108.) After the reopened opt-in period closed, all but two employees who had withdrawn their consent to join the action decided to remain in the case as Opt-In Plaintiffs.

From about May until September 2017, Defendants provided to Plaintiffs weekly pay and time records for 134 individuals spanning the previous three years.[3] In total, Defendants produced to Plaintiffs tens of thousands of pages of time cards and pay records, and both parties spent several months reviewing the records in order to calculate the amounts due to the Plaintiffs and Opt-In Plaintiffs. Because Defendants had been paying employees on a "production" basis that varied week to week, the parties' calculations included discerning the proper hourly rate for every individual week, calculating the hours worked for every individual week, and then running an analysis to determine how much overtime may be owed, if any, for each individual week. Both parties ran this analysis for all 130+ individuals, spanning every week for a three-year period.

On September 21, 2017, the parties participated in a full-day mediation with Daniel Klein, Esq., a well-respected employment law mediation, and reached a settlement.[4]

---

[3] Defendants changed their payroll practices at issue in March 2017 and began paying their employees on an hourly basis, and they have continued to pay employees for the overtime that they worked ever since.

[4] Defendants agreed to pay a total settlement amount of $500,000 out of a common fund. The fund includes (1) payments to members of the settlement class based on their hours worked, hourly rates, and

Based on a week-by-week analysis of three years of pay and time records for each of 134 employees, Plaintiffs' counsel believes that the settlement compensates participating employees for all overtime that they may be owed over a three-year period and a significant portion of the potential liquidated damages. By any measure, this was a superb outcome for the Named and Opt-in Plaintiffs.

After receiving notice of the settlement, including the amounts they may receive in the settlement and the proposed amount of attorneys' fees, *none of the 134 Opt-In Plaintiffs rejected the settlement*.[5] Plaintiffs' counsel's representation even provided a significant benefit to employees who did not opt-in to this matter: Defendants changed their pay practices after Plaintiffs filed this lawsuit and began to compensate employees for overtime worked. These facts show that the results achieved by Plaintiffs' counsel for Defendants' employees were significant.

**B.   Attorneys' Fee Request**

Section 216(b) of the FLSA states that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Settlement Agreement states that Defendants

---

length of service, (2) Plaintiffs' attorneys' fees, costs and expenses approved by the Court, (3) any Court-approved service award, and (4) the full amount of class members' W-2 withholdings. A copy of the Settlement Agreement is attached to the parties' Joint Motion to Approve, filed concurrently with this motion, as Exhibit 1.

[5]   *See Garner v. State Farm Mut. Auto. Ins.,* No. CV 08 1365 CW (EMC), 2010 WL 1687832, *15 (N.D. Cal. Apr. 22, 2010) (finding an opt-out rate of 0.4 percent supported "the fairness of the Settlement"); *Mangone v. First USA Bank,* 206 F.R.D. 222, 227 (S.D. Ill. 2001) (an opt-out rate of 0.10614 percent and an objection rate of 0.0052 percent represented "overwhelming support" for a settlement by class members and "strong circumstantial evidence supporting the fairness of the Settlement"); *see also Churchill Village*, 361 F.3d at 577 (affirming approval of a class action settlement where 90,000 class members received notice, and only 45 objections were received); *In re Austrian and German Bank Holocaust Litig.,* 80 F.Supp.2d 164, 175 (S.D.N.Y. 2000) (finding a small number of objectors "indicative of the adequacy of the settlement").

shall pay Plaintiffs' attorneys' fees and costs out of the common fund, and the Notice of Settlement provided to Opt-In Plaintiffs states that Plaintiffs will seek attorneys' fees not to exceed 33.33% of the common fund.  Whether the Court analyzes this matter using the common fund or the lodestar method, as described below, the result is nearly the same.  Thus, should the Court approve the Settlement Agreement in total, Plaintiffs seek attorneys' fees of $164,927.18[6] and costs of $5,213.46.

In this action, Plaintiffs and each Opt-In Plaintiff stand to recover a settlement payment net of all fees and costs that is well in excess of the amount to be awarded if Defendants succeeded on their willfulness defense to a third year of recovery of overtime compensation or their "good faith" defense to doubling back pay for liquidated damages.  Plaintiffs' counsel's work in prosecuting this case also resulted in Defendants' change of its pay practices on a going forward basis to the benefit of all currently employed non-exempt employees. Thus, Plaintiffs have succeeded on significant claims, and Plaintiffs' counsel is entitled to payment of their attorneys' fees and costs in this action out of the common fund.  *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985) ("Fee awards are therefore mandatory for prevailing plaintiffs in FLSA cases.").

The Court has wide discretion in calculating an attorneys' fee award.  *Martinez v. Hernando Cty. Sheriff's Office,* 579 F. App'x 710, 713 (11th Cir. 2014).   In *Camden I Condominium Assoc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), the Eleventh Circuit held that "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."  946 F.2d at 774.  It also stated that the majority of common fund fee awards fall between 20% and 30% of the fund, and it directed district courts to

---

[6]     This figure is one-third of the common fund after costs have been deducted.

view this range as a benchmark which "may be adjusted in accordance with the individual circumstances of each case" using the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). *Id.* at 775.

The *Johnson* factors include: (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19. In addition to these factors, the Eleventh Circuit also directed district courts to consider "whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel" and "any non-monetary benefits conferred upon the class by the settlement," and it noted that "[i]n most instances, there will also be additional factors unique to a particular case which will be relevant to the district court's consideration." *See Camden I*, 946 F.2d at 775.

Many district courts in the Eleventh Circuit have followed the Eleventh Circuit's *Camden I* directive and approved attorneys' fees in the range sought by Plaintiffs here. *See, e.g., Guzman v. The Consumer Law Group, PA, et al.*, No. 1:11-cv-00187-JRH, 2016 WL 755915, at *4 (S.D. Ga. May 11, 2016) (approving 33.33% of the settlement fund in attorneys' fees after analyzing *Johnson* factors and noting that the settlement results were favorable to class members and no class member objected, but without a retaliation component); *Duque v. 130 NE 40th St., LLC*, No.

14-23965-CIV, 2016 WL 7442797, at *3 (S.D. Fla. Jan. 27, 2016) (approving 33% of the settlement fund in attorneys' fees after explaining that counsel achieved substantial results for class and no class member opted out of the settlement, but without a retaliation component); *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 814CV01182CEHEAJ, 2015 WL 12843849, at *2 (M.D. Fla. Dec. 7, 2015) (awarding 32% of common fund as attorneys' fees in FLSA action (no retaliation component) and noting that this figure "is consistent with the fees awarded by other courts in the Eleventh Circuit"); *Seghroughni v. Advantus Rest., Inc.*, No. 8:12-CV-2000-T-23TBM, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) (awarding 33.33% of common fund as attorneys' fees in FLSA action (no retaliation component) based on "the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Vogenberger v. ATC Fitness Cape Coral, LLC*, No. 2:14-CV-436-FTM-29CM, 2015 WL 1883537, at *4 (M.D. Fla. Apr. 24, 2015) (finding a 33% attorneys' fee to be in line with those awarded by other courts in this district in FLSA matter, but case did not involve retaliation); *Hosier v. Mattress Firm, Inc.*, No. 3:10-CV-294-J-32JRK, 2012 WL 2813960, at *6 (M.D. Fla. June 8, 2012), *report and recommendation adopted,* No. 3:10-CV-294-J-32JRK, 2012 WL 2838610 (M.D. Fla. July 10, 2012) (awarding 30% of common fund as attorneys' fees in FLSA action without retaliation component); *Moultry v. Cemex, Inc.*, Case No. 8:07-cv-00453-MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees). Plaintiffs attorneys' fee request is reasonable whether the Court analyzes it under the "percent of the fund" or, alternatively, uses the "lodestar" method[7].

---

[7] Courts in this Circuit have alternatively applied the lodestar method to determining attorneys' fees in FLSA actions, often when cases involve no common fund. In determining an objective estimate of the value of a lawyer's services using the lodestar method, a court must multiply those hours reasonably expended by a reasonable hourly rate, to compute the "lodestar." *Hensley v. Eckerhart,* 461 U.S. 424, 433

Analyzing the *Johnson* factors:

### i. *The Time and Labor Required*:

The hours claimed or spent on a case are "[t]he most useful starting point for determining the amount of a reasonable fee." *Hensley,* 461 U.S. at 433. Counsel must exercise "billing judgment" in determining the hours reasonably expended on the merits (*id.* at 437), and attorneys should also be compensated for the time reasonably expended in seeking an award of fees from the court. *ACLU v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999); *Johnson,* 706 F.2d 1205, 1207; *Yule v. Jones*, 766 F. Supp. 2d 1333, 1347 (N.D. Ga. 2010).

Counsel's certification that the work itemized has in fact been performed is "entitled to considerable weight on the issue of time required." *Perkins v. Mobile Hous. Bd.,* 847 F.2d 735, 738 (11th Cir. 1988); *Frazier v. Wurth Indus. of N. Am., LLC,* 2009 U.S. Dist. LEXIS 94444 (N.D. Ga. 2009). Indeed, this Circuit has stated that "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and, therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Perkins,* 847 F.2d at 738.

In making a fee request, "[c]ounsel ... should make a good faith effort to exclude

---

(1983); *Kenny A. ex rel. Winn v. Perdue,* 547 F.3d 1319 (11th Cir. 2008). There is a "strong presumption that the lodestar reflects a reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.* 380 Fed. App'x. 888, 891 (11th Cir. 2010) (internal quotations omitted); *Webster Greenthumb Co. v. Fulton Cty.,* 112 F.2d 1339, 1349 (N.D. Ga. 2000). Once the lodestar has been established, a court can then determine whether any adjustments to the lodestar are appropriate. *Hensley*, 461 U.S. at 434; *Jan R. Smith Construction Co. v. DeKalb County*, 18 F.Supp.2d 1365, 1374 (N.D. Ga. 1998). While the "lodestar" method effectively replaced the balancing test prescribed by *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), the twelve *Johnson* factors "might still be considered in terms of their influence on the lodestar amount." *Norman,* 836 F.2d at 1299; *see also Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1340 (11th Cir. 1999) ("The [district] court properly considered the reasonable attorney fee guidelines the former Fifth Circuit outlined in *Johnson*. . . which we have subsequently adopted for reasonable fee determinations for prevailing parties").

from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434; *Norman,* 836 F.2d at 1301. "[C]ompensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment, and even preparing and litigating the request for attorney's fees." *Weissinger,* 2009 WL 1971612, at *6 (internal citations omitted).

Plaintiffs' attorneys have maintained detailed, accurate and contemporaneous records of time spent working in this matter and expenses incurred in prosecuting the matter, which are exhibits to the Declarations of Andrew Weiner (Exhibit A hereto) and Oscar Prioleau (Exhibit B hereto). Plaintiffs' attorneys have excluded from their request time communications between co-counsel and the time they anticipate they will spend on the administration of the settlement, if approved.

Taken as a whole, the time and labor required to prosecute this action was substantial, but not excessive. Because the Court in its experience is well aware of the range of attorney's fees that would necessarily be incurred in prosecuting this FLSA case to collective action settlement over the course of a year – including (1) analyzing tens of thousands of pay and time records for 134 individuals over a three-year period and (2) moving for a preliminary injunction to address Plaintiffs' termination of employment; and (3) moving for a protective order to address the FLSA's opt-in process – the reasonableness of Plaintiffs' counsel's request for approval of attorneys' fees is readily apparent. This is so, particularly because of the overtime and retaliation results achieved and the time and labor resources required to prosecute this case.

### ii. *The Novelty and Difficulty of the Questions*:

Employment cases, and FLSA cases in particular, often present both novel and difficult legal questions. Although this case began as a straightforward overtime collective action, it quickly evolved into a more complex lawsuit. Upon learning that Plaintiffs had filed this action, Defendants fired both of them, which transformed this action into a hybrid overtime and retaliation lawsuit. This also prompted Plaintiffs' counsel to file an emergency motion for preliminary injunction and temporary restraining order to address the retaliation. Additionally, Plaintiffs moved for conditional certification, which the Court granted. Then, during the opt-in period, Plaintiffs learned that Defendants were sabotaging the collective action process by intimidating employees from participating in the lawsuit. As a result, Plaintiffs filed an Emergency Motion (1) to Reopen Case for Limited Purpose of Addressing Motion for Protective Order and (2) for Protective Order and Other Relief. Following this motion, Plaintiffs' counsel negotiated extensively with Defendants' counsel to resolve these issues. As a result of these negotiations, the Court granted Plaintiffs' motion. This action began as a relatively straightforward overtime collective action, but metamorphosed into a more complex and difficult lawsuit.

### iii. *The Skill Requisite to Perform the Legal Service Properly:*

Here, two skilled co-lead counsel had to present a detailed FLSA overtime and retaliation case in a form that made it relatively easy to understand. Plaintiffs' counsel's expertise was called upon throughout the litigation to obtain clear evidence and prepare a foundation to prevail at trial, should the parties not be able to resolve the matter. Additionally, Plaintiffs' counsel communicated with 134 of Defendants' current and former employees to aid them in understanding their overtime and retaliation rights. With daily (and sometimes hourly) phone calls from many of

the 134 individuals – most of whom lacked email for communication purposes – this required substantial time and effort.

### iv. *The Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case:*

This factor supports the requested award. While Plaintiffs' counsel could litigate other matters alongside this matter, Plaintiffs' attorneys were partially precluded from other employment as a product of the substantial time they had to spend on the litigation of this action. This time included addressing Defendants' actions in response to Plaintiffs' filing of this lawsuit and Opt-In Plaintiffs' joining the lawsuit, as well as daily phone calls from many of the 134 Opt-In Plaintiffs.

### v. *The Customary Fee*:

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norma v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). But courts in the Eleventh Circuit have held that a party may recover fees based on rates outside the district where the court sits if the party can show why it was necessary to go outside the district and obtain counsel at higher rates. *Lamensdorf v. Welin*, No. 5:09-CV-424 MTT, 2011 WL 6151431, at *4 (M.D. Ga. Dec. 12, 2011); *Mun Hwa Broad. Corp. v. Mi Sook Kim*, 2007 WL 1730137 at *2 (M.D. Ga. June 13, 2007). Plaintiffs assert that they can meet this standard and seek a $350 per hour rate for Attorneys Weiner and Prioleau, which is already discounted from their standard rate for FLSA matters of $385 per hour, and a $250 per hour rate for Attorney Bullock, which is discounted from his standard rate for FLSA matters of $300 per hour.

While Plaintiffs' counsel is aware that their rate may not be customary in the Waycross Division, they contend that it was necessary for Plaintiffs to go outside the district to retain their counsel. Throughout Plaintiffs' employment with Defendants, and especially after Plaintiffs filed this action, Defendant Freedom Trailers' senior executives tried to influence Plaintiffs and their co-workers to not pursue a legal action by telling them that they knew the judges and attorneys in the local legal market. (*See* Declaration of Carlos Wardlaw (attached as Exhibit C, ¶4.) The effect of Defendants' actions was to maintain the pay practices at issue in this lawsuit for many years, until Plaintiffs decided to stand up for their rights. But when Plaintiffs decided to pursue this legal action, they took Defendants threats seriously and believed that retaining counsel in the closest large legal market – Atlanta – would best protect them from Defendants implied threats. (*Id.,* ¶¶6-7.) Presciently, Plaintiffs' fear of retaliation for standing up for their rights came to fruition: Defendants fired them as soon as they were served with the lawsuit, writing on Plaintiffs' separation notices that they were fired because of the lawsuit. (*Id.,* ¶8.)

As set forth in the Declarations of Attorneys Weiner and Prioleau, the requested $350 hourly rate has been approved in several cases in years' past:

- January 10, 2018: Approval of $350 per hour for Oscar Prioleau in an FLSA case by the Honorable Amy Totenberg. *Johnnie R. Winston, III v. Kandi Burruss-Tucker and Kandi Koated Entertainment, Inc.* (N.D. Ga., Civil Action No. 1:16-cv-04018-AT, Dkt. 115)

- May 11, 2016: Approval of $350 per hour for Oscar Prioleau by the Honorable Eleanor L. Ross. *Christopher Neilly v. J & T Management, Inc. d/b/a American Kidney Fund Pick Up Service.* (N.D. Ga., Civil Action No. 1:16-cv-0013-ELR, Dkt. 13.

- September 14, 2015: Approval of $350 per hour for Andrew Weiner in a case by the Honorable Leigh Martin May, *Diniz, et al. v. Alpha OB GYN Group, P.C.* (N.D. Ga., Civil Action No. 1:12-cv-02621-LMM, Dkt. 106);

- March 31, 2015:  Approval of $350 per hour for Andrew Weiner in a case by the Honorable Charles A. Pannell, Jr.  *Massey v. Retirement Corp. of Amer. Ptnrs., L.P.* (N.D. Ga., Civil Action No. 1:12-cv-02949-CAP, Dkt. 68);

- October 3, 2014:  Approval of $350 per hour for Andrew Weiner in a case by the Honorable Amy Totenberg.  *Towns, et al. v. Southeastern Shuttle Services, Inc., et al.* (N.D. Ga., Civil Action No. 1:14-cv-1337-AT, Dkt. 27); and

- July 17, 2013: Approval of $350 per hour for Andrew Weiner in a case by the Honorable Owen J. Forrester.  *Diniz, et al. v. Alpha OB GYN Group, P.C., et al.* (N.D. Ga., Civil Action No. 1:12-cv-02621-WCO, Dkt. 40).

(Exs. A, B).  Plaintiffs respectfully request that the Court approve the requested hourly rate.

### vi. *Whether the Fee is Fixed or Contingent*:

Here, the fee arrangement was contingent because the time required by the case was too great as to exceed the resources of Plaintiffs and their families.  Both Plaintiffs and their counsel took a significant risk in pursuing this matter against Defendants because of the risk of not succeeding and the costs necessary to pursue the action.

### vii. *Time Limitations Imposed by the Client or the Circumstances*:

The time limitations imposed here came mainly from the litigious nature each step of this case required.  These limitations included filing motions to address Defendants' actions in response to Plaintiffs' filing of this lawsuit and Opt-In Plaintiffs' joining the lawsuit, as well as daily phone calls from several of the 134 Opt-In Plaintiffs.  In addition, Plaintiffs' counsel spent significant time reviewing and analyzing each of weekly pay and time records for 134 individuals, spanning a three-year period, to calculate the overtime owed on a week-to-week basis.  These actions required Plaintiffs' attorneys to focus a very substantial portion of their time and practice resources to prepare this case for resolution, whether at trial or through mediation.

### viii. *The Amount Involved and the Results Obtained:*

The settlement reflects that Plaintiffs achieved very successful results on their claims.

Indeed, the settlement provides all Opt-In Plaintiffs – including those who were coerced to withdraw their opt-in consents in the first instance – with all of the overtime that they are owed based on a review and analysis of their pay and time records, and much of their liquidated damages.  Additionally, Plaintiffs' counsel successfully addressed Defendants' retaliatory termination of the Named Plaintiffs and obtained an Order requiring Defendants to return them to work.  Plaintiffs' counsel even obtained a significant benefit for employees who did not opt-in to this matter, as Defendants changed their pay practices after Plaintiffs filed this action and began to pay employees overtime compensation.  That nearly 40% of eligible employees chose to participate in this action by opting-in, and no Opt-In Plaintiff chose to reject the settlement when given the opportunity to do so, show the excellent results obtained by Plaintiffs' counsel.  *Pierre-Val*, 2015 WL 12843849, at *2 (approving fee award of 32% in FLSA action and explaining that "Class Counsel negotiated a fair and favorable settlement for the Class Members, as evidenced by the high response rate and the fact that no Class Member objected to any of the terms of the Settlement Agreement.").  This factor weighs heavily in support of this motion.

      **ix.**     *The Experience, Reputation, and Ability of the Attorneys:*

The significant experience, reputation and ability of Plaintiffs' counsel are set forth in their attached declarations.  (Exs. A, ¶¶3-5; B, ¶¶3-6.)  Additionally, Plaintiffs' counsel's performance throughout this litigation evidences the ability of counsel  and the quality, time, and level of effort devoted to the representation.

      **x.**     *The Undesirability of the Case*

As courts have recognized, civil rights cases are undesirable and thus warrant payment of a higher fee to attract competent counsel.  *Johnson*, 488 F.2d at 719.  Civil rights cases are

viewed as undesirable by most members of the Bar. *See, e.g., Searcy v. Crim*, 692 F.Supp.1363, 1366 (N.D. Ga. 1988) ("Although there are a great many lawyers in the Atlanta area, the Court is aware that it is difficult to find any attorney who has the time, experience and financial cushion necessary to accept Section 1983 cases on a contingency basis"). Civil rights litigation generally is seen "as very undesirable because it stigmatizes an attorney as a 'civil rights lawyer' and thus tends to deter fee-paying clients, particularly high-paying commercial clients, from seeking assistance from that lawyer." *Stokes v. City of Montgomery*, 706 F. Supp. 811, 815 (M.D. Ala. 1988), *aff'd*, 891 F.2d 905 (11th Cir. 1989). The undesirability of this case weighs in favor of a full award of fees.

C. **Costs Request**

Under 29 U.S.C. § 216(b), in addition to attorneys' fees, a court shall award a prevailing plaintiff "the costs of the action." As itemized in Paragraphs 19-20 of Exhibit A, Plaintiffs seek recovery of litigation expenses incurred on their behalf in the amount of $5,213.46.[8] These expenses include the filing fee ($400), pro hac vice fees ($600.00), mediator costs ($3,725.46), and postage costs,[9] and all were necessary for the prosecution of this action. *See Key v. Kight*, No. 6:14-CV-39, 2017 WL 915133, at *9 (S.D. Ga. Mar. 8, 2017), *report and recommendation adopted,* No. 6:14-CV-39, 2017 WL 1128601 (S.D. Ga. Mar. 24, 2017) (approving reimbursement for filing fee, materials needed for attorney's *pro hac vice* admission and

---

[8] Plaintiffs have excluded from their request the costs of all legal research expenses, photocopy and printing costs, and PACER expenses. These costs were not minimal, as Plaintiffs incurred expenses in (1) legal research relating to the motion practice and (2) printing the several notices sent to the opt-in plaintiffs in the case.

[9] To date, Plaintiffs have incurred $225.36 in postage costs. This cost consists mostly of the various first-class mailings throughout the case to the 134 opt-in plaintiffs. Because Plaintiffs' counsel is handling the administration of a settlement, they anticipate they will incur another $262.64 in postage costs to mail all settlement checks. This anticipated cost is included in Plaintiffs' request for $5,213.46 in costs.

postage).

## CONCLUSION

For the reasons set forth above and for good cause shown, Plaintiffs respectfully request that this Court enter the Order approving their request for attorneys' fees in the amount of $164,927.18 and costs of $5,213.46.

Respectfully submitted this 19th day of January, 2018.

By: __s/ Andrew Weiner_____
John F. Beasley, Jr.
Georgia Bar No. 045010
JF BEASLEY LLC
31 North Main Street
P.O. Box 309
Watkinsville, GA  30677
Tel: (706) 769-4410
Fax: (706) 769-4471
jfbeasley@jfbeasleylaw.com

Andrew L. Weiner
Georgia Bar No. 808278
Jeffrey B. Sand (*pro hac*)
Georgia Bar No. 181568
THE WEINER LAW FIRM LLC
3525 Piedmont Road
7 Piedmont Center, 3rd Floor
Atlanta, Georgia 30305
(404) 205-5029 (Tel.)
(404) 254-0842 (Tel.)
(866) 800-1482 (Fax)
aw@atlantaemployeelawyer.com
js@atlantaemployeelawyer.com

Oscar E. Prioleau, Jr. (*pro hac*)
Georgia Bar No. 588510
PRIOLEAU & MILFORT, LLC
3800 Camp Creek Parkway
Building 1800, Suite 124
Atlanta, Georgia 30331

(404) 526-9400 (Tel.)
(404) 920-3330 (Fax)
oscar@pmlawteam.com

COUNSEL FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing UNOPPOSED MOTION FOR ATTORNEY'S FEES AND COSTS with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

> W. JONATHAN MARTIN II
> ALYSSA K. PETERS
> 577 Mulberry Street, Suite 710
> P.O. Box 1975
> Macon, GA 31202-1975
> (478) 750-8600
> jmartin@constangy.com
> apeters@constangy.com

This 19th day of January, 2018.

/s/ Andrew Weiner
Counsel for Plaintiffs